UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MISSOURI
(EASTERN DIVISION)

|  |  |  |
|---|---|---|
| *LIGHTHOUSE FOR THE BLIND* | ) ) ) |  |
| Plaintiff, | ) ) |  |
| v. | ) ) | Cause No. 4:16-cv-01264-RWS |
| *CREP PROTECT, LTD.* | ) ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF LIGHTHOUSE FOR THE BLIND'S MOTION
TO ENFORCE SETTLEMENT AND MEMORANDUM IN SUPPORT**

COMES NOW, Lighthouse for the Blind (the "Lighthouse"), by and through undersigned counsel of record and pursuant to Local Rule 7-4.01 and moves this Court to enforce settlement against Defendant CREP Protect, Ltd. ("CREP"). In support of its motion, the Lighthouse states the following:

**INTRODUCTION**

For a second time, CREP seeks to renege on a binding agreement with the Lighthouse. This is an action surrounding CREP's refusal to pay for product components that were purchased by the Lighthouse to fill orders that CREP placed, and then later cancelled. On July 19, 2017, after months of settlement discussions, CREP finally offered to "purchase the product from [the Lighthouse] in an amount which would entirely deplete the inventory claimed in the lawsuit…[and to] pay the original price [$1.19/bottle] for this." The Lighthouse accepted CREP's offer and transmitted a Sales Order to CREP that would resolve this litigation. Weeks went by with no response from CREP. More than a month and a half later, CREP reneged on its

8884595

offer and attempted to renegotiate. Lighthouse brings the instant motion to enforce the parties agreed upon settlement.

## FACTS

1. On August 2, 2016, this action for breach of contract was filed by the Lighthouse (the "Complaint").

2. Lighthouse's Complaint alleged that U.K.-based product distributor CREP had ordered over 850,000 cans of new product to be manufactured by the Lighthouse, then cancelled its orders and refused to reimburse the Lighthouse for approximately $100,000 in non-returnable component parts it had purchased to fill CREP's orders.

3. During the Court's initial scheduling conference, counsel verbally discussed whether a business transaction could be structured in which the Lighthouse would manufacture additional product in an amount sufficient to extinguish the remaining component inventory.

4. For several months thereafter, the Parties attempted to negotiate such a settlement.

5. In response to CREP's December 1, 2017 inquiry (*See Exhibit 1*), the Lighthouse confirmed the specific quantity of component parts that remained in inventory, "Can Tips-1,503,690; Can Valves-400,715; Can Caps-849,300; Cans-28,557; and Cartons 3138." *A true and accurate copy of the Lighthouse's December 29, 2016 email is attached hereto as Exhibit 2.*

6. CREP acknowledged receipt of the specific component quantities from the Lighthouse through email correspondence dated December 30, 2016. *A true and accurate copy of CREP's confirming email correspondence is attached hereto as Exhibit 3.*

7. On April 11, 2017, the Lighthouse conveyed a settlement proposal to CREP pursuant to which it offered to initially produce 385,000 cans of product at $1.19/can which would reduce the remaining inventory cost from approximately $100,000 to $55,000, then either

8884595

produce additional product to extinguish the remainder or permit CREP to purchase the remaining component parts from the Lighthouse. *A true and accurate copy of the Lighthouse's April 11, 2017 settlement proposal is attached hereto as Exhibit 4.*

8. On April 14, 2017, CREP responded to the Lighthouse's proposal, confirming its interest in "com[ing] to a business agreement that resolves the litigation" and counteroffering to purchase 385,000 cans of product at $1.00/can and to "instruct [the Lighthouse] for further runs if the initial run is as per our expectations...." *A true and accurate copy of CREP's April 14, 2017 first counterproposal is attached hereto as Exhibit 5.*

9. On May 8, 2017, the Lighthouse conveyed a counter demand to run 385,000 cans of product at $1.19/can and, again, to permit CREP to either purchase the remaining inventory or purchase additional product to extinguish it. *A true and accurate copy of the Lighthouse's May 8, 2017 counter-demand is attached hereto as Exhibit 6.*

10. On May 16, 2017, CREP communicated that it could accept all of the Lighthouse's terms, but would only pay $1.05/can for the initial 385,000 run. *A true and accurate copy of CREP's May 16, 2017 email is attached hereto as Exhibit 7.*

11. That same day, the Lighthouse responded to CREP's price proposal, disclosing its awareness that CREP was selling its product at a retail price of over $15.00/bottle on the open market, and reiterating that the original contractual rate of $1.19/bottle would barely cover the Lighthouse's cost. *A true and accurate copy of the Lighthouse's May 16, 2017 correspondence is attached hereto as Exhibit 8.*

12. Finally, on July 19, 2017, CREP transmitted the final settlement proposal to the Lighthouse, stating:

> CREP will purchase the product from LHB in an amount which will deplete the inventory claimed in the lawsuit provided that CREP confirms that the packaging

3

8884595

meets all regulatory and legal requirements to sell throughout the US and there is a failure rate of less than 4%.[1]  CREP will pay the original agreed price for this.

*A true and accurate copy of CREP's settlement offer is attached hereto as Exhibit 9.*

13. On July 20, 2017, the Lighthouse accepted CREP's proposal stating, "we will prepare a Sales Order for product sufficient to extinguish the remaining component parts in the Lighthouse's inventory at the agreed upon price…" *A true and accurate copy of the Lighthouse's July 20, 2017 acceptance is attached hereto as Exhibit 11.*

14. CREP confirmed receipt of the Lighthouse's acceptance through email dated July 20, 2017 stating "Sounds good. Thanks." *A true and accurate copy of CREP's July 20, 2017 settlement confirmation is attached hereto as Exhibit 11.*

15. On August 14, 2017, per the parties' agreement, the Lighthouse sent CREP its draft Settlement and Release Agreement for CREP's final review and comment.  *A true and accurate copy of the Lighthouse's communication is attached hereto as Exhibit 12.*

16. On August 31, 2017, over a month after settlement was agreed to by the parties and two weeks after a draft settlement and release agreement and been transmitted to CREP, the Lighthouse followed up, stating "if we do not receive comments (if any) by September 5th, we will file a Motion to Enforce Settlement."  *A true and accurate copy of the Lighthouse's August 31, 2017 email is attached hereto as Exhibit 13.*

17. CREP confirmed receipt of the Lighthouse's email, stating, "I expect to have a response to you today regarding the specifics of the agreement.  I know that my client is meeting today to get me a response.  I will be in touch." *A true and accurate copy of the Lighthouse's September 5, 2017 email is attached hereto as Exhibit 14.*

---

[1] The quality standards demanded by CREP were agreed to by the Lighthouse, and are thus were never at issue.

18. On September 5, 2017, CREP abruptly reneged on settlement with the Lighthouse, claiming that its "offer was to deplete product from the inventory on hand; not to add inventory to increase the number of cans beyond what was on hand." *A true and accurate copy of CREP's September 5, 2017 email is attached hereto as Exhibit 15*.

19. CREP further stated that "the order should be for 28,000 cans (being the 28,557 cans LHB has as raw material less an approximate 2% scrap rate)…[t]he price is correct at $1.19. To the extent that LHB is interested, and as an accommodation for the residual components for which there is not enough inventory, CREP Protect will buy the remaining raw materials for a total of $25,000 from LHB." *Id*.

## **LEGAL STANDARD**

The federal courts have the inherent power to enforce a settlement agreement entered into by the parties in a pending litigation. *Barry v. Barry*, 172 F.32 1011, 1013 (8th Cir.1999). Settlement agreements are contracts subject to the general rules of contract construction. *N.L.R.B. v. Superior Forwarding, Inc*., 762 F.2d 695, 697 (8th Cir. 1985). In a diversity case, a settlement contract must be construed according to state law. *Barry*, 172 F.3d at 1013.

Under Missouri law, an enforceable agreement to settle an existing lawsuit must be enforced by the Court. *Liefler v. Bi-State Development Agency*, 612 S.W.2d 835, 836 (Mo. Ct. App. 1981) (affirming the trial court's enforcement of the parties' settlement agreement); *accord Wenneker v. Frager*, 448 S.W.2d 932 (Mo. Ct. App. 1969) (holding that the settlement agreement created a legal obligation warranting enforcement in accordance with the terms of the settlement). The essential elements of a valid settlement include: (1) competent parties; (2) proper subject matter; (3) legal consideration; (4) mutuality of obligation; and (5) mutuality of agreement. *Chaganti & Assocs., P.C. v. Nowotny*, 470 F.3d 1215, 1221 (8th Cir. 2006).

5

8884595

Consideration is found where there is a detriment to the promissee or a benefit to the promisor, and mutuality of obligation exists where consideration is found *Citibank (South Dakota), N.A. v. Wilson*, 160 S.W.3d 810, 813 (Mo. Ct. App. 2005). Mutuality of agreement exists where there is mutuality of assent by the parties to the terms of the agreement. *L.B. State Comm. Of Psychologists*, 912 S.W.2d 611m 617 (Mo. Ct. App. 1995) (enforcing settlement agreement disputed by Defendant).

Missouri Courts have consistently expressed their strong preference for the enforcement of settlement agreements. *See Allen v. Nevin Waters, D.D.S., PC*, No. 4:11CV01255 AGF, 2012 WL 1745550, at *1 (E.D. Mo. May 16, 2012), *aff'd*, 498 F. App'x 669 (8th Cir. 2013); *McClaskey v. La Plata R-II Sch. Dist.*, No. 203CV00066 AGF, 2006 WL 3803686, at *8 (E.D. Mo. Nov. 7, 2006), aff'd, 256 F. App'x 867 (8th Cir. 2007); *Caleshu v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 737 F. Supp. 1070, 1086 (E.D. Mo. 1990), *aff'd*, 985 F.2d 564 (8th Cir. 1991); *U.S. ex rel. Peterson v. Sanborn Map Co.*, No. 4:11CV000902 AGF, 2014 WL 414358, at *7 (E.D. Mo. Feb. 4, 2014); *Faith Satellite Radio, LLC v. Lutheran Church Missouri Synod*, No. 4:11CV00073 AGF, 2012 WL 5948916, at *2 (E.D. Mo. Nov. 28, 2012), *order clarified*, No. 4:11CV00073 AGF, 2013 WL 531118 (E.D. Mo. Feb. 12, 2013); *Gustin v. F.D.I.C.,* 835 F. Supp. 503, 507 (W.D. Mo.), *supplemented*, 843 F. Supp. 536 (W.D. Mo. 1993).

In *Leffler v. Bi-State Development Agency*, the defendant moved to enforce a settlement purportedly reached in a plaintiff's suit for damages. 612 S.W.2d 835, 836 (Mo.App.1981). The plaintiff denied that his attorney had authority to accept defendant's offer to settle. *Id.* The trial court held an evidentiary hearing on the motion before granting defendant's motion to enforce. *Id.* In affirming the judgment, the court held that a presumption of express authority to settle arises when the attorney of record asserts such authority. *Id.* at 837. Under Missouri law, "the

8884595

party attacking a release or settlement 'bears the burden of showing that the contract he has made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake <u>under which both parties acted</u>.'" *Id.* (quoting *Cameron v. Norfolk & W. Ry.*, 891 S.W.2d 495, 499 (Mo. Ct. App.1994)(emphasis added).

**ARGUMENT**

**I.     THE PARTIES' SETTLEMENT WAS BETWEEN COMPETENT PARTIES WITH PROPER SUBJECT MATTER.**

CREP and the Lighthouse are sophisticated corporate entities that have been represented by competent counsel through settlement discussions.  The parties' discussion revolved around a resolution of the almost $100,000 in component parts that were ordered by the Lighthouse at CREP's direction – a proper subject matter for settlement.  As a result, the first two elements for enforcing the parties' settlement agreement are satisfied.

**II.    THE CONSIDERATION AND MUTUALITY OF OBLIGATION FOR THE PARTIES' SETTLEMENT IS UNDISPUTED.**

CREP's settlement offer to "purchase the product from LHB in an amount which will deplete the inventory claimed in the lawsuit…" constitutes sufficient consideration in the form of CREP's binding obligation to purchase new product and the Lighthouse's obligation to manufacture new product and dismiss its claims against CREP pursuant to the parties settlement.

**III.   MUTUALITY OF AGREEMENT IS CLEARLY EVIDENCED BY THE PARTIES' SETTLEMENT COMMUNICATION.**

   **A. CREP Knew the Component Parts Required to Manufacture Each Can of New Product.**

As both parties knew that each can of new product included the following component parties: (1) a can tip; (2) a can valve; (3) a can cap; (4) a can; and (5) a carton.  CREP was aware that the Lighthouse had varying quantities of each component on hand, and that each new bottle

7

of product would require one of each component part[2]. CREP was well aware of the component parts that were include in each can of new product that were manufactured by the Lighthouse, as it had previously ordered almost a million cans of CREP Protect and the parties had specifically discussed the costs associated with these respective component parts.  In fact, months before this litigation was filed, the Lighthouse specifically advised CREP of the exact number of each component part that had been ordered to fill CREP's prior orders of new product.  LHB even pled the component parts that were at issue in the litigation in paragraph 12 of the Lighthouse's Complaint.  There can be no doubt that CREP knew the exact quantity of component parts that were in inventory and, consequently, the exactly number of new product bottles required to exhaust that inventory.

### B.  CREP Knew that Settlement Included a *Full* Settlement of *All* Claims.

Over an eight month period of extensive settlement discussions, <u>the parties never discussed a partial settlement of claims relating to the component parts</u>.  As set forth in the attached exhibits, the parties <u>only</u> discussed full settlement, which included <u>all</u> the component parts. Until the final settlement offer was made by CREP, the parties had consistently discussed CREP utilizing half the remaining inventory in a new product run, and then committing to either purchasing the remaining component parts or placing a second new product order to exhaust the remaining inventory.  At no time did the parties' discuss a partial settlement.

In fact, CREP's prior settlement communication even indicated that "…we can work with almost all of [the terms] you have below," reflecting its understanding that <u>all</u> remaining

---

[2] Given its knowledge that the Lighthouse had different quantities of component parts on hand, and that one of each component part was required to manufacture each new product can, CREP's objection to the Lighthouse ordering certain *additional components* is confusing.  For example, CREP was well aware that the Lighthouse had twice as many cans as it had caps.  To manufacture product sufficient to "deplete the inventory claimed in the lawsuit" (CREP's settlement offer), the Lighthouse would need to order additional caps to complete the order.  While the Lighthouse's counsel represents no particular mathematical proficiency whatsoever, it would appear self-evident that if one wishes to manufacture two cans of product and yet only possess one component cap – that same individual is going to need to acquire an additional cap.

8884595

inventory would need to be utilized to resolve this litigation.  *See Exhibit 7*.  Months after CREP's offer had been accepted, CREP suddenly changed course and abruptly claimed that it had only offered to purchase 28,000 *cans*, despite that it had consistently offered to purchase 385,000+ units of new product and additional cans sufficient to deplete the remaining inventory through virtually every single communication transmitted during discussions.

The unambiguous substance and context of CREP's final settlement offer make clear that its offer was to "purchase the product from LHB in an amount which will deplete the inventory claimed in the lawsuit."  The absurdity of CREP's misinterpretation of its own settlement offer is demonstrated by the result that occurs if it were held true.  CREP's claim is that the Lighthouse somehow only agreed to purchase 28,000 units of new product – leaving the Lighthouse to financially absorb the cost of 2,680,262 remaining units (1,475,690 can tips; 372,715 can valves; 831,300 can caps; and 557 cans).  CREP's view is entirely inconsistent with anything ever proposed by it or the Lighthouse throughout the course of this dispute.  It simply isn't true.

The unambiguous terms of settlement require CREP "to purchase the product from LHB in an amount which will deplete the inventory claimed in the lawsuit" at $1.19/can (the original contract price).  Mutuality of obligation exists in that the Lighthouse agreed to manufacture, and CREP agreed to purchase, the agreed upon new product run.  The Lighthouse accepted CREP's offer and this Court should enforce the parties' agreement accordingly.  To hold otherwise would allow CREP to renege on its own proposal and breach yet a second valid and binding contract with the Lighthouse.

WHEREFORE, Plaintiff Lighthouse for the Blind respectfully requests this Court review the parties' communication attached hereto, declare and decree that the parties' have a valid binding settlement agreement on the terms set forth in the settlement agreement attached hereto

8884595

as Exhibit 12, enforce said settlement agreement, and grant the Lighthouse such other and further relief as this court deems just and proper under the circumstances.

                              SANDBERG PHOENIX & von GONTARD P.C.

By:   */s/ M. Quinn Murphy*
       M. Quinn Murphy, #53832MO
       Jacob W. Thessen, #67114MO
       600 Washington Avenue - 15th Floor
       St. Louis, MO  63101-1313
       314-231-3332
       314-241-7604 (Fax)
       qmurphy@sandbergphoenix.com
       jthessen@sandbergphoenix.com

*Attorneys for Plaintiff Lighthouse for the Blind*

### Certificate of Service

I hereby certify that on the 22nd of September 2017 the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Brandan P. Mueller
brandan.mueller@huschblackwell.com
*Attorney for Defendant Crep Protect, Ltd*

                              */s/Carolyn Heiman*